Territorial Law Library

FILED
SUPERIOR COURT

# IN THE SUPERIOR COURT OF GUAM

7?? NOV 25 PM 2: 57

CRIMINAL CASE NO. CF0190-07

CLERK OF COURT

PEOPLE OF GUAM,

BY:_____

vs.

**DECISION AND ORDER
(RESTITUTION)**

ALBERT AGUON CRUZ,
CHRISTOPHER ANTHONY REYES
DYDASCO,

Defendants.

This matter came before the HONORABLE VERNON P. PEREZ on February 4, 2009 for a restitution hearing. Assistant Attorney General Suzanne Horrigan appeared on behalf of the Prosecution. Attorney Clyde Lemons was present with Defendant Christopher Anthony Reyes Dydasco. Attorney Douglas Moylan was present with Defendant Albert Aguon Cruz. After having heard the Parties' arguments, considering the Parties' pleadings and the record, the Court now issues the following Decision and Order.

## BACKGROUND

On or about May 10, 2007, Defendant Christopher Anthony Reyes Dydasco (hereinafter "Defendant Dydasco") and Defendant Albert Aguon Cruz (hereinafter "Defendant Cruz") were indicted on three charges; Burglary (As a Second Degree Felony), Theft (As a Second Degree Felony) and Criminal Mischief (As a Misdemeanor). The three charges alleged in the indictment stem from Defendants Dydasco and Cruz taking of movable property and destruction of various vending machines, at various locations. On or about December 4, 2008, Defendants Dydasco and Cruz each, individually, pled guilty to Theft (as a 3rd Degree Felony). The plea agreements for both Defendants provided that they are to be held jointly and severally liable for restitution. (See,

Plea Agreement for Defendant Dydasco, dated December 9, 2008, at ¶ 7; Plea Agreement for Defendant Cruz, dated December 9, 2008, at ¶ 4(c)).

On July 7, 2008, a Restitution report was filed by the Probation Office in which Jose Rios Middle School and Foremost Coca Cola claimed restitution amounts relative to the offenses committed by Defendants Dydasco and Cruz. Attached to the July 7, 2008 Restitution report, were supporting documents provided by both Jose Rios Middles School and Foremost Coca Cola. On July 24, 2008, another Restitution report was filed by the Probation Office in which the same victims filed updated claims for restitution as a result of the offenses committed by Defendants Dydasco and Cruz. Referenced in this Restitution report filed by the Probation Office, was the claim by an additional victim, Ace Vending.

On August 8, 2008, a Restitution hearing was held before the Honorable Robert Klitzkie, which was continued in essence, to allow the victims to provide more documentation to support their restitution amounts requested. On August 11, 2008, the Honorable Robert Klitzkie issued an Order, which among other things, set forth that the Defendants had stipulated to Jose Rios Middle School's claim for restitution in the amount of four hundred thirty four ($434.00) dollars.

On August 19, 2008, another Restitution report was filed by the Probation Office, which contained additional supporting documentation on behalf of Foremost Coca Cola and Ace Vending. Ace Vending's claim of restitution, in the amount of thirteen thousand six hundred fifty-two ($13, 652.00), was supported by five pages of documentation. Foremost Coca Cola's claim of restitution, in the amount of thirty one thousand four hundred eighty nine dollars and ten cents ($31,489.10), was supported by some ninety-six pages of documentation. On August 20, 2008, another Restitution hearing was held before the Honorable Robert Klitzkie, which was

continued to allow the Defendants the opportunity to review the supporting documentation filed by Ace Vending and Foremost Coca Cola.

On December 4, 2008, the Defendants appeared before this Court for a sentencing hearing as to the plea agreements. At the hearing, it was brought to the Court's attention of the previous stipulation by the Defendants as to the restitution amount of $434.00 claimed by Jose Rios Middle School. On February 4, 2009, another restitution hearing was held before this Court. At the hearing, representatives from Ace Vending and Foremost Coca Cola testified at length in support of their respective claims and were subject to cross-examination by counsel for Defendant Dydasco and counsel for Defendant Cruz. On February 27, 2009, another Restitution report was filed by the Probation Office, which contained further supporting documentation by Ace Vending.

## DISCUSSION

Provisions regarding restitution in criminal cases are contained in Title 9 Guam Code Annotated Chapter 80, Article 3, §§ 80.50 through 80.58. Under 9 G.C.A. § 80.50 restitution is usually capped at a statutory amount related to the class of crime for which the offender has been convicted. However, 9 G.C.A. § 80.50(e) allows the court to set a higher amount of restitution. This section states in relevant part:

> Any higher amount equal to double the pecuniary gain to the offender or loss to the victim caused by the conduct constituting the offense by the offender. In such case the court shall make a finding as to the amount of the gain or loss, and if the record does not contain sufficient evidence to support such a finding the court may conduct a hearing upon the issue. For purposes of this Section, the term "gain" means the amount of money or the value of the property deprived by the offender and the term "loss" means the amount of value separated from the victim.

9 G.C.A. § 80.50 (e).

Restitution orders have as their goals: (1) economic compensation for the victim or victims of the defendant's crime; (2) rehabilitation of the defendant(s); and (3) the deterrence of the defendant(s) and others from committing future offenses. People v. Dehle, 83 Cal. Rptr. 3d 461, 465 (Cal. App. 3 Dist., 2008). As to the victims, the primary purpose of victim restitution is to fully reimburse the victim or victims for his or her economic losses due to the offenses committed by the defendant(s). People v. Jennings, 26 Cal. Rptr. 3d 709, 719 (Cal. App. 4 Dist., 2005); U.S. v. Innarelli, 524 F.3d 286. 293 (1st Cir., 2008). Victim restitution is proper to make the victim or victims whole again by restoring to them the value of the losses they have suffered as a result of the defendant's crime. U.S. v. Gordon, 393 F.3d 1044, 1053 (9th Cir. 2004).

In the instant matter, the Defendants have stipulated to the amount of restitution, $434.00, claimed by Jose Rios Middle School. The remaining restitution amounts for this Court to address are the claims made by Ace Vending and Foremost Coca Cola. The Court will address these remaining two restitution claims separately.

Ace Vending makes a claim for restitution in the amount of thirteen thousand six hundred and fifty-two dollars ($13, 652.00). This amount pertains to two vending machines that were damaged by the Defendants. One vending machine is a snack machine that was completely destroyed by the Defendants. The other vending machine is a drink machine that had to be repaired and was out of commission from April of 2007 to July of 2007. A more detailed breakdown as to the specific restitution amounts claimed by Ace Vending, as to these two machines, is found in the August 19, 2008 Restitution Report filed by the Probation Office.

As to the restitution claim made by Ace Vending, Defendants first argue that the $5,920.00 estimated losses to the snack machine and the $1,272.00 estimated losses to the drink machine are speculative damages. Specifically, Defendants claim that the amounts estimated for

the losses are not adequately supported by sufficient documentation. Further, Defendants argue that the estimated losses claimed by Ace Vending for each vending machine, do not factor in the overhead costs for inventory items used to stock the two vending machines and are thus, improper.

A trial court is vested with broad discretion in setting the amount of restitution. People v. Millard, 95 Cal. Rptr. 3d 751, 767 (Cal. App. 4 Dist., 2009). In determining the amount of restitution, the trial court may use any rational method of fixing the amount of restitution, which is reasonably calculated to make the victim(s) whole. People v. Tucker, 44 Cal. Rptr. 2d 1, 6 (Cal. App. 1 Dist., 1995). Thus, while the amount of restitution cannot be arbitrary or capricious there is no requirement that the restitution order be limited to the exact amount of the loss in which the defendant is actually found culpable, nor is there any requirement that the restitution order reflect the amount of damages that might be recoverable in a civil action. People v. Ortiz, 53 Cal. App. 4th 791, 800 (1997). Case law is clear that exact precision in a restitution award is not required, only a rough estimate of the amount necessary to make the victims whole. People v. Baker, 23 Cal. Rptr. 3d 871, 877 (Cal. App. 5 Dist., 2005); Gaind v. U.S., 871 F. Supp. 186, 189 (1994) (holding that where illegality is established, damages may be estimated if precise measurement is impracticable). Courts also allow the owner of personal property to give his or her estimate of the value of his or her own property for purposes of determining restitution. State v. Rhoda, 503 A.2d 364, 369 (N.J. Super. App., 1986).

In State v. Harrah, 2008 WL 2546174 (Wash. App. Div. 3, 2008), the defendant got drunk and drove his car into a convenience store building. The store owner had to close the store for a period of time while the damage to the store was repaired. The trial judge ordered restitution for the damages to the store and for lost profits while the store was closed for repairs.

On appeal, the defendant argued that the loss of sales numbers awarded were based on sales on expected lost profits rather than actual loss to the victim. The defendant further argued that there was not sufficient evidence to support an award of restitution for the actual loss to the company. The Court of Appeals of Washington held that evidence is sufficient to support a restitution order if it affords a reasonable basis for estimating loss and does not subject the trier of fact to mere speculation or conjecture. Id. at *1. The Court of Appeals of Washington found that the trial court's comparison of the profits of the previous year with the profits for the time period the store was closed for repair, easily support the discretionary award of restitution. Id. at *2.

Contrary to the assertions made by Defendant Dydasco and Cruz, this Court finds that the estimated loss amounts claimed by Ace Vending are adequately supported by documentation and testimony by Ace Vending at the various restitution hearings in this matter. Ace Vending has provided to this Court two sets of document filings, one on August 19, 2008 and the other on February 27, 2009, which detail the damages that they have sustained as a result of the offenses committed by the Defendants. At the February 4, 2009 hearing, Ace Vending testified that there were no specific documents that they had in their possession to set forth the estimated losses for each vending machine, down to the precise penny. (Feb. 4, 2009 Rest. Hrg. at 3:21-3:23 p.m.). Ace Vending did testify, consistently, that they had used an average monthly amount for each of the damaged machines, over a four to six month period, to determine the monthly estimated losses now claimed. (Feb. 4, 2009 Rest. Hrg. at 3:11-3:22 p.m.). Ace Vending also testified that they felt the figures claimed were more than likely less than what they had actually lost as a result of the Defendants offenses. (Feb. 4, 2009 Rest. Hrg. at 3:17-3:18 p.m.). In particular, Ace Vending testified that they had not emptied the machines for some months prior to the offenses. (Feb. 4, 2009 Rest. Hrg. at 3:12; 3:21-3:22; 3:37 p.m.). Yet, Ace Vending only claimed

estimated loss amounts from the time of the offenses forward. Given the testimony and documentation filed by Ace Vending, this Court finds that Ace Vending has provided sufficient documentation and testimony for this Court to rationally and reasonably calculate the amount of restitution relative to the economic losses suffered by Ace Vending as a result of the Defendant's offenses.

As to the claim that the estimated losses do not adequately account for the amounts used for inventory, this Court finds that Ace Vending provided sufficient documentation to account for the amounts used for inventory to restock each machine on a monthly basis. On February 27, 2009, Ace Vending filed with the Probation Office further supporting documentation that details the mark-up amounts used for the various products that are stocked in the vending machines. The mark-up amounts, varied from 80% to 300%. Ace Vending testified, at the February 4, 2009 restitution hearing, that there are some thirty-eight products that are stocked in the vending machines with various mark-up's that are determined on a product type, varying basis. (Feb. 4, 2009 Rest. Hrg. at 4:04-4:05 p.m.).

This Court, taking the average of the range of mark-ups between 80% to 300%, to be 190%, finds that by applying the average mark-up to the average monthly losses is able to ascertain a workable formula to account for the costs of inventory used to restock each machine on a monthly basis. For the snack machine, the formula would show $370.00 (estimated monthly loss as provided by Ace Vending) multiplied by .190% (the average mark-up) = $70.30 (the cost of inventory). Taking the $370.00 (estimated monthly loss) - $70.30 (average cost of inventory) = $299.70 (the monthly loss from the snack machine, which accounts for the costs of inventory to restock the machine).

For the drink machine, the formula would show $318.00 (estimated monthly loss as provided by Ace Vending) multiplied by .190% (the average mark-up) = $60.42 (average cost of inventory). Taking the $318.00 (estimated monthly loss) - $60.42 (average cost of inventory) = $257.58 (the monthly loss from the drink machine, which accounts for the costs of inventory to restock the machine.) Thus, the Court by employing a reasonable method for determining the cost of inventory used to stock each machine, now finds that the average monthly loss for the snack machine to be $299.70 and for the drink machine to be $257.58.

Defendants next argue that the estimated losses for the two vending machines claimed by Ace Vending, is for too long of a period of time and that Ace Vending had a duty to mitigate their losses. As to the duty to mitigate damages, Guam law appears to be silent as to whether crime victims have a duty to mitigate damages. The Ninth Circuit has held that a crime victim is not required to mitigate damages. In U.S. v. Rice, 38 F. 3d 1536 (9th Cir. 1994), the defendants pled guilty to charges of conspiracy and mail fraud and were ordered to pay restitution to four companies injured by their criminal conduct. Arguments were made by the defendant's that at least one of the victims had a duty to mitigate its' damages by keeping better internal records. The Ninth Circuit held that a crime victim is not required to mitigate damages. Id. at 1542, *citing to,* U.S. v. Soderling, 970 F.2d 529, 534 (9th Cir. 1992), *cert denied,* 508 U.S. 952 (1993).

Even assuming that Defendants can make a viable argument that Ace Vending was under a duty to mitigate its' damages, this Court would still find that the restitution damages for estimated losses claimed by Ace Vending, directly result from the Defendant's offenses and are warranted in the instant matter. In State v. Kalal, 204 P.3d 1240, 1242 (Mont., 2009), the defendant was charged with theft of a tractor. The victim of the theft sought restitution for loss of income, arising from his inability to use the tractor for a number of income-generating projects.

At the restitution hearing, the defendant argued that the victim had a duty to mitigate his damages by renting another tractor in order to complete the income-generating projects. The trial court found persuasive the testimony of the victim, at the restitution hearing, that due to the demands of his full time job, he could not be available to complete the projects in one continuous period of time. Based on the victim's testimony, the trial court found that there were serious practical impediments to the renting of another tractor and as such, awarded the loss of income for several of the income-generating projects claimed by the victim.

The Supreme Court of Montana, in addressing the issue of whether a crime victim has a duty to mitigate damages, determined that the duty of an injured party to reduce or mitigate damages is generally limited to what an ordinary prudent person would be expected to do if capable under the circumstances. Kalal, 204 P.3d at 1241-1242. The Supreme Court of Montana found that the victim's loss of income in the amount of $15, 960, on account of the defendant's theft of his tractor, constituted a pecuniary loss for which restitution was warranted. Id. The Supreme Court of Montana, in upholding the trial court, found that no reasonable man could be expected to spend money or time he does not have to mitigate an injury for which he is not responsible. Id. at 1242.

The holding in Kalal, is equally applicable to the instant matter. This Court finds that Ace Vending consistently testified, at the various restitution hearings, that they were a small company and did not have the financial resources to immediately purchase either replacement parts for the drink machine or a new snack machine to replace the one destroyed by the Defendants. (Feb. 4, 2009 Rest. Hrg. at 3:15; 3:18; 3:30-3:31 p.m.). This Court finds that contrary to the assertions made by the Defendants, Ace Vending is not under any duty to expend money which they don't

have, in order to replace the damaged snack machine or to quickly order parts to repair the drink machine, in order to mitigate the damages caused by the Defendants in this case.

As to the loss period claimed to be excessive by the Defendants, the drink machine estimated period of loss is from April 2007 to July 2007. Ace Vending testified, at the February 4, 2009 Restitution hearing, that this four month time frame was the time used to acquire the money to order the parts needed to repair the drink machine, have the repair items delivered to Guam and for the actual repairs on the drink machine to be completed and put back into service. (Feb. 4, 2009 Rest. Hrg. at 3:12; 3:17-3:18; 3:30-3:32 p.m.). This Court finds that this four month time frame is not an unreasonable amount of time to have the damaged drink machine repaired and put back into service. As set forth above, Ace Vending is not required to expend either time or money that they don't have, in order to mitigate an injury for which they are not responsible. This Court finds that this four month time frame is an economic loss incurred by Ace Vending which directly results from the offenses committed by Defendants Dydasco and Cruz.

The estimated loss period for the snack machine is from May 2007 to August 2008, a period of sixteen months. Ace Vending testified at the February 4, 2009 Restitution hearing that the snack machine was completely destroyed by the Defendants. (Feb. 4, 2009 Rest. Hrg. at 3:13 p.m.). Once again, Ace Vending testified extensively at the restitution hearings, that they are a small company that does not have the financial resources to readily purchase a snack machine to replace the one that was damaged by the Defendants. (Feb. 4, 2009 Rest. Hrg. at 3:15; 3:18 p.m.). Ace Vending also testified that they would use any restitution amounts paid, to purchase the replacement snack machine. Ace Vending testified at the February 4, 2009 Restitution hearing, that the sixteen month period should actually be longer and that the August 2008 time

frame was only put in as the time frame in which the claim for restitution had been initially filed with the Probation Office. (Feb. 4, 2009 Rest. Hrg. at 3:10 p.m.).

This Court finds that the sixteen month estimated period of loss for the destroyed snack machine, is not too far removed from the specific offenses that the Defendants have pled guilty to. As set forth above, Ace Vending is not required to expend either time or money, which they don't have, in order to mitigate an injury for which they are not responsible. In addition, the Court finds that the estimated losses for this period of time claimed by Ace Vending, $4,795.20 as set forth below, is not an excessive amount of damages in relation to the replacement cost of the damaged machine. As set forth in the August 19, 2008 filing by Ace Vending, the replacement cost of the destroyed vending machine, together with the shipping cost amounts to $4,045.00. See, State v. Juardo, 905 P.2d 274 (Or. App., 1995) (finding that lost profits that totaled to be more than three times the value of the lost equipment to be an excessive amount of restitution).

Based on the foregoing, the Court in employing the monthly losses for the drink machine to be $257.58 multiplied by the four month loss period = $1,030.32 in estimated total losses for the drink machine. Adding in the other losses incurred by Ace Vending for the drink machine, as set forth in the August 19, 2008 Restitution report, the Court finds that the total restitution claim for the drink machine amounts to two thousand eight hundred forty five dollars and thirty-two cents ($2,845.32). The Court in employing the monthly losses for the snack machine to be $299.70 multiplied by the sixteen month loss period = $4,795.20. Adding in the other losses incurred by Ace Vending for the snack machine, as set forth in the August 19, 2008 Restitution report, the Court finds that the total restitution claim for the snack machine amounts to nine thousand four hundred forty-four dollars and twenty cents ($9,440.20). Adding the restitution

amounts together, this Court finds that the total amount of twelve thousand two hundred eighty five dollars and fifty-two cents ($12,285.52) is sufficient to support an award of restitution to Ace Vending.

Foremost Coca Cola makes a claim for restitution in the amount of $31,489.10. The breakdown for the restitution amount is $13,052.41 for parts and labor to repair the damaged vending machines, $2,307.35 for pilferage (stealing from the various vending machines) and $16,489.10 for the loss of sales. (See, August 19, 2008 Restitution report filed by the Probation Office.) Foremost Coca Cola filed a substantial amount of documentation in support of their claim for restitution. Foremost Coca Cola's claim for damages includes the damage to some twenty-eight vending machines in various locations.

Defendants first argue that some of the restitution claims are outside the period of the indictment or do not have a corresponding police report that was referenced in the plea agreements. Defendants assert that those claims outside the indictment period are not a proper claim for restitution. Specifically, Defendants point to the restitution claim for damages to the vending machines at Astumbo Gym, which were reported on October 26, 2006 and apply to police report 06-27869. (See, Foremost Coca Cola Summary Report filed on August 19, 2008). Defendants also argue that the restitution claim for damages to the vending machines at JFK Annex, Jose Rios 6th grade wing and Jose Rios 8th grade wing are all outside of the indictment period. Defendants claim that the vending machines at these three locations were reported on April 26, 2007, some two days outside the indictment period.

In the instant matter, the May 10, 2007 indictment makes references to a dated period, in the second and third charge, of: "On or about the time between December 1, 2006 through April 24, 2007". Both the indictment and the plea agreements for both Defendants, reference GPD

Report Nos: 07-11818; 07-10160; 07-09429; 07-09066; 07-08928; 07-03938; 07-02956; 07-00974. Defendants make no arguments that they did not damage the vending machines at these locations which fall outside the referenced period in the indictment. Defendants simply argue that since the indictment does not specifically reference this period of time, they are not responsible for restitution for the damages done to the vending machines at these locations.

The Court finds this argument not persuasive. An indictment is a charging document to notify a defendant of the crimes charged. U.S. v. Anderson, 532 F.2d 1218, 1222 (9th Cir. 1976). The language contained in the indictment of "on or about" allows flexibility as to the exact time frame(s) of when a crime or crimes are committed. As to claims for restitution, it is not uncommon for Courts to award restitution amounts that are claimed outside the scope or period of the indictment. See, U.S. v. Rice, 38 F.3d 1536, 1543-1545 (9th Cir. 1994) (awarding restitution for items purchased after the conspiracy allegedly ended). The Court also points out that as to the damages to two of the vending machines reported on April 26, 2007, the vending machines located at Jose Rios 6th grade wing and Jose Rios 8th grade wing, these two locations were part of GPD Report No: 07-11818, which was specifically referenced in both Defendant Dydasco and Defendant Cruz's plea agreements.

Defendants next argue that as to Foremost Coca Cola's claim for loss of sales in the amount of $16,129.34, that they should only be responsible for a reasonable amount of time to repair the various vending machines and to get them back into operation. In particular, Defendants argue that they should only be held for a two week period of time, for the loss of sales due to the various damaged vending machines being out of commission. Defendants in essence argue that Foremost Coca Cola had a duty to mitigate the repairs to the damaged vending machines and to get them back into operation pronto. Based on the above discussion pertaining

to the duty to mitigate, this Court finds that Foremost Coca Cola is not required to expend either time or money, in order to mitigate for injuries which they are not responsible.

Furthermore, in the Supporting Sales Loss Report filed by Foremost Coca Cola on August 19, 2008, it shows that as to the seventeen machines that were damaged, six machines were put back into operation after a one month time frame; three machines were put back into operation after a two month time frame; four machines were put back into operation after a three month time frame and three machines were put back into operation after a four month time frame. At the February 4, 2009 Restitution hearing, Foremost Coca Cola testified that they did prioritize the repairs to the damaged vending machines, so that the higher dollar yielding vending machines were repaired first and put back into service as quickly as possible. (Feb. 4, 2009 Rest. Hrg. at 5:01-5:02; 5:07-5:08; 5:13 p.m.). Foremost Coca Cola also testified that there are only two service representatives that work for the company who were able to work on the various vending machines damaged by the Defendants. (Feb. 4, 2009 Rest. Hrg. at 4:58-5:01; 5:11-5:13 p.m.). Foremost Coca Cola testified that the service representatives are part of a union contract and that the company could not, per the union agreement, higher extra service personnel to help facilitate the repair of the damaged vending machines. (Feb. 4, 2009 Rest. Hrg. at 5:01-5:02; 5:07-5:08; 5:13 p.m.).

Based on the documents filed and the testimony of Foremost Coca Cola at the February 4, 2009 Restitution hearing, the Court finds that Foremost Coca Cola did in fact mitigate the repair damages and efforts to put the damaged vending machines back in service as quickly as possible. Foremost Coca Cola prioritized the repairs to the machines damaged by the Defendants so that the higher dollar yielding machines were repaired first. As to the hiring of additional service representative, certainly Defendants cannot expect Foremost Coca Cola to break their

union contract to hire more service representatives to cover the damages that the Defendants themselves have caused. Nor would the Court demand the same of Foremost Coca Cola.

Nor would this Court expect Foremost Coca Cola to divert the two service representatives to work exclusively on the seventeen vending machines damaged by the Defendants. Had such a diversion of the service representatives occurred, Foremost Coca Cola would have no doubt filed a claim for restitution for the loss of sales incurred as to other vending machines that remained non-operational while the seventeen vending machines damaged by the Defendants were being repaired. Moreso, if Defendants had it their way and Foremost Coca Cola diverted the two service representatives to the exclusive repair of the seventeen vending machines damaged by the Defendants, Foremost Coca Cola would still have a valid claim for lost sales profits to other vending machines that remained non-operational as a result of the diversion. See, People v. Lucero, 2007 WL 4305546 (Cal. App. 3 Dist., 2007).

Defendants last argue that the economic losses claimed by Foremost Coca Cola as restitution do not account for the commissions that Foremost Coca Cola pays to its' employees and the various schools where the vending machines are located. Defendants attempt to argue that Foremost Coca Cola is making a claim for restitution for persons and entities who are not properly victims in the present restitution proceeding. The Court finds this argument to be without merit. The economic losses claimed by Foremost Coca Cola are direct losses to them alone. How Foremost Coca Cola distributes the amounts taken from the various vending machines earned, is a Foremost Coca Cola business dealing that this Court need not delve any further into. Notwithstanding, at the February 4, 2009 restitution hearing, Foremost Coca Cola testified that they would pay the commissions appropriately, if and when they ever received any restitution payments from the Defendants. (Feb. 4, 2009 Rest. Hrg. at 4:43-4:45 p.m.).

## CONCLUSION

For the foregoing reasons, the Court **ORDERS** that Defendant Dydasco and Defendant Cruz are to severally and jointly pay restitution to: Jose Rios Middle School, in the amount of four hundred thirty four dollars ($434.00); to Foremost Coca Cola in the amount of thirty one thousand four hundred eighty nine dollars and ten cents ($31, 489.10); and to Ace Vending in the amount of twelve thousand two hundred eighty five dollars and fifty two cents ($12,285.52).

NOV 2 5 2009

So **ORDERED** this day of _____ November, 2009.

_____
HONORABLE VERNON P. PEREZ
JUDGE, SUPERIOR COURT OF GUAM ...

I do hereby certly that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court, Guam

Dated at Agana, Guam

NOV 2 5 2009
_____
Jacqueline S. C. Terlaje
Deputy Clerk, Superior Court of Guam